**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
———————————————————————————————

**IVAN DARIO PEREZ MELO,**

                          **Petitioner,**            **22-cv-9912 (JGK)**

         **- against -**                    **MEMORANDUM OPINION**
                                            **AND ORDER**

**PAUL ARTETA, ET AL.,**

                          **Respondents.**
———————————————————————————————

**JOHN G. KOELTL, District Judge:**

        The petitioner, Ivan Dario Perez Melo, petitions for a writ
of habeas corpus pursuant to 28 U.S.C. § 2241, seeking relief in
connection with his ongoing mandatory immigration detention under
8 U.S.C. § 1226(c). The petition names the following respondents
in their official capacities: (1) Paul Arteta, Sheriff of Orange
County, New York; (2) William Joyce, Acting Field Office Director
for the New York City Field Office of U.S. Immigration and Customs
Enforcement ("ICE"); (3) Alejandro Mayorkas, Secretary of the U.S.
Department of Homeland Security ("DHS"); and (4) Merrick Garland,
Attorney General of the United States.[1] The petitioner argues
that his continued detention without a bond hearing violates the
Due Process Clause of the Fifth Amendment, and he requests an
order directing the respondents to (1) release him from custody,

_____

[1] The petition originally named Carl DuBois, then the Sheriff of Orange
County, New York, as the first respondent. Pet., ECF No. 1. Paul Arteta, the
current Sheriff of Orange County, is automatically substituted for DuBois
pursuant to Federal Rule of Civil Procedure 25(d).

or (2) in the alternative, provide a bond hearing with certain procedural protections. For the following reasons, the petition for a writ of habeas corpus is **denied**.[2]

## I.

The petitioner is a native and citizen of Colombia. Pet., ECF No. 1, ¶ 17. On February 22, 2022, the petitioner and his family entered the United States and encountered a border patrol agent. Id.; see Kim Decl., ECF No. 12, ¶ 4. The petitioner was "placed on an ankle monitor and a reporting schedule" and paroled into the interior of the United States on the following day. Pet. ¶ 17; Kim Decl. ¶ 4. On May 28, 2022, the petitioner presented to ICE with his family members for further processing. Kim Decl. ¶ 7. Upon conducting a routine background check, ICE discovered that the petitioner had been convicted of an aggravated felony in Colombia. Id. On May 31, 2022, pursuant to an ICE request, the petitioner returned to ICE and presented Colombian criminal court documents establishing that, in 2005, the petitioner was convicted of attempted homicide and aggravated theft and sentenced to a prison term of 70 months. Id. ¶ 8; see Pet. ¶ 18.

That same day, ICE determined that the petitioner was subject to removal in light of his conviction, initiated removal

---

[2] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

proceedings, and placed the petitioner in immigration custody at the Orange County Correctional Facility ("OCCF") in Goshen, New York. Kim Decl. ¶¶ 9-11; see Pet. ¶ 19. Since that date, the petitioner has remained at OCCF in a housing unit for immigration detainees that is separate from where criminal inmates are held. Kim Decl. ¶ 11.

On June 14, 2022, the petitioner first appeared before an immigration judge ("IJ") via teleconference from OCCF. Id. ¶ 12. At the hearing, the IJ sustained the charge of removability under the federal immigration laws and adjourned the case to June 28, 2022, so that the petitioner could submit any application for relief from removal. Id. On June 27, 2022, the petitioner filed a Form I-589 application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Id. ¶ 13; Pet. ¶ 21. The June 28, 2022 hearing was then adjourned to June 30, 2022, because the IJ was ill. Kim Decl. ¶ 14. At the June 30, 2022 hearing, the IJ adjourned the petitioner's case to August 2, 2022, for a merits hearing on the I-589 application for relief from removal. Pet. ¶ 22.

At the August 2, 2022 hearing, the petitioner's attorney asked to withdraw from the case on the basis that the petitioner's partner had "misrepresented" the petitioner's criminal conviction to counsel. Id. ¶ 25. The IJ denied the request, citing concerns that former counsel's true reason for seeking withdrawal was the

petitioner's inability to pay. See id. ¶ 28. The IJ then granted a continuance to August 9, 2022, "to see if [the petitioner] could be represented by pro bono attorneys from the New York Immigrant Family Unity Project" ("NYIFUP"). Id.

One week later, at the August 9, 2022 hearing, the IJ asked the petitioner's counsel to conference with an NYIFUP attorney who was present in court about representing the petitioner. Id. ¶ 29. The IJ then adjourned the case to August 23, 2022, so that NYIFUP "could decide whether to represent [the petitioner]." Id.

At the August 23, 2022 hearing, the IJ granted the NYIFUP attorney's motion to substitute as counsel for the petitioner. Id. ¶ 30. The petitioner's new counsel requested an adjournment until September 6, 2022, to familiarize himself with the record. Id. At the September 6, 2022 hearing, the IJ scheduled a hearing on the merits of the petitioner's I-589 application for October 14, 2022. Id. ¶ 31.[3]

During the October 14, 2022 hearing, the petitioner testified that the Colombian authorities charged him with attempted homicide after he passed by a street fight in which his acquaintance harmed another individual, and that defense counsel had advised him to

---

[3] The parties' submissions reflect a discrepancy as to the precise date in October 2022 on which this merits hearing occurred. See Pet. ¶ 31 (October 14); Kim Decl. ¶ 19 (October 4). Because the IJ's decision on the I-589 application refers only to an October 14, 2022 hearing, this Memorandum Opinion and Order uses that date. See IJ Decision, Gov. Return, Ex. 10, ECF No. 10-10, at 2 (noting that the petitioner "testified in support of his applications on October 14, 2022").

plead guilty in order to avoid a severe sentence. IJ Decision, Gov. Return, Ex. 10, ECF No. 10-10, at 4; see Pet. ¶ 18. The petitioner also testified that he feared returning to Colombia because he was likely to face torture at the hands of a group of armed individuals who had previously attacked and threatened the petitioner and his partner. See IJ Decision at 3-4. In support of his CAT claim, the petitioner and his expert on country conditions in Colombia advanced two alternative theories as to the identity of the armed group: either the group consisted of members of the ELN,[4] who targeted the petitioner with the acquiescence of the Colombian government, or the group consisted of Colombian army personnel disguised as ELN insurgents. Id. at 4-6. The petitioner contends that during the hearing, the IJ "embraced a prosecutorial role" and cross-examined the petitioner and his expert. Pet. ¶ 33.

At the close of the hearing, the IJ reserved decision on the petitioner's claims for relief from removal. Id. ¶ 34. Also in October 2022, the petitioner filed a release request with ICE, providing proof that the Colombian authorities had released him on parole in 2008 and that he did not have any subsequent encounters with the criminal justice system. Id. ¶ 36. ICE denied the request on October 30, 2022. ICE Letter, Gov. Return, Ex. 9, ECF No. 10-9.

---

[4] The ELN (National Liberation Army) is an insurgent guerilla group that has been operating in Colombia for over 50 years. See IJ Decision at 4.

5

On November 10, 2022, the IJ issued a decision denying all of the petitioner's claims for relief and ordering the petitioner removed to Colombia. <u>See</u> IJ Decision at 20-21. The IJ concluded that the petitioner was statutorily barred from securing asylum and withholding of removal because the petitioner was convicted in Colombia of a "particularly serious crime," namely, attempted homicide.[5] <u>Id.</u> at 9-11; <u>see also</u> <u>id.</u> at 11-13. The IJ found that while the petitioner was "generally" credible, his "testimony concerning the facts surrounding his attempted homicide conviction [was] implausible and unpersuasive," <u>id.</u> at 7-8, and "criminal court documents" from Colombia "refute[d] [his] account," <u>id.</u> at 10. Those court records indicated that the petitioner's criminal conviction arose out of an incident in which the petitioner and a "co-perpetrator stabbed the victim multiple times in the head, chest, and arms," and "then stole [the victim's] cell phone." <u>Id.</u> at 10. The victim was "injured . . . so severely [that] he was deemed temporarily disabled for over a month." <u>Id.</u> at 10.

With respect to the CAT claim, the IJ found that the petitioner had failed to sustain his burden of establishing a

---

[5] The federal immigration laws "bar[] the grant of asylum or withholding of removal to an alien who[] . . . has been convicted by a final judgment of a particularly serious crime." <u>Flores v. Holder</u>, 779 F.3d 159, 167 (2d Cir. 2015); <u>see</u> 8 U.S.C. § 1158(b)(2)(A)(ii) (asylum); <u>id.</u> § 1231(b)(3)(B)(ii) (withholding of removal). The IJ found that the petitioner had been convicted of both "attempted homicide" and "grievous aggravated theft," but the IJ's "analysis . . . focused on the attempted homicide offense" alone. IJ Decision at 10.

likelihood of torture upon his return to Colombia. Id. at 14. The IJ concluded that neither of the petitioner's theories of the armed group's identity was sufficient to satisfy the CAT's definition of torture, which requires a showing that a "public official" or other person "acting in an official capacity" was involved in, consented to, or "acquiesce[d]" in the infliction of the "pain or suffering" at issue.[6] Id. at 14 (citing 8 C.F.R. § 1208.18); see id. at 15-20.

On November 21, 2022, the petitioner filed his petition for a writ of habeas corpus in this Court, alleging that his ongoing mandatory detention pursuant to 8 U.S.C. § 1226(c) violates his Fifth Amendment due process rights. The next day, the petitioner timely appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). Kim Decl. ¶ 23.

On April 20, 2023, the BIA issued a decision affirming the IJ's decision in large part. The BIA rejected the petitioner's

---

[6] Specifically, the CAT's implementing regulations provide, in relevant part, as follows:

> Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity[.]

8 C.F.R. § 1208.18(a)(1).

objections to the IJ's assessment of his testimony, and it also found that the IJ had not exhibited any bias or malice toward the petitioner. <u>See</u> BIA Decision, ECF No. 17-1, at 3-4, 8. The BIA also affirmed the IJ's determination that the petitioner's attempted homicide conviction was a "particularly serious crime," because the "record evidence and official conviction documents" established that "the victim was stabbed repeatedly with a knife in the course of being robbed of his property." <u>Id.</u> at 5.

Turning to the CAT claim, the BIA agreed with the IJ's rejection of the petitioner's theory that "Colombian officials would acquiesce to torture from the ELN." <u>Id.</u> at 6. However, the BIA found that the IJ erred in concluding that the "state action" requirement could not be fulfilled where Colombian army personnel committed torture while "disguised as ELN insurgents." <u>Id.</u> at 7-8 (explaining that "[i]f the [perpetrators] relied on their power and authority due to their military positions" to facilitate the act of torture, such circumstances would "raise[] significant questions" about whether the perpetrators acted "under color of law"). Accordingly, the BIA "affirm[ed] the [IJ]'s CAT analysis" with respect to the denial of CAT relief on the theory "relating to the ELN," but it "remand[ed] for further factual findings" and analysis on the "remaining" theory of CAT relief "regarding the Colombian military." <u>Id.</u> at 8.

This Court ordered supplementary briefing on the effects of the BIA's decision. ECF No. 16. The briefs indicated that the IJ held additional post-remand hearings on June 13, 2023, and June 29, 2023. See Pet. Supp. Br., ECF No. 17, at 2; Gov. Supp. Br., ECF No. 19, at 8 n.3. As of July 5, 2023, the date on which the last supplementary brief was filed, the IJ had scheduled one final hearing for July 12, 2023, after which point, "the IJ [would] decide a second time" whether the petitioner is entitled to relief from removal. Pet. Supp. Reply, ECF No. 20, at 4.

## II.

Congress has authorized federal district courts "to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" Wang v. Ashcroft, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). This authorization extends to claims by noncitizens challenging the constitutionality of their detention. See Demore v. Kim, 538 U.S. 510, 516-17 (2003).

Federal immigration law authorizes DHS to arrest and initially detain a noncitizen who has entered the United States and is believed to be removable. See 8 U.S.C. § 1226(a). Certain classes of noncitizens are subject to mandatory detention and may not, under the text of 8 U.S.C. § 1226(c), be released until the removal proceedings conclude. Jennings v. Rodriguez, 138 S. Ct. 830, 837-38 (2018). For example, noncitizens convicted of two or

more nonpolitical offenses "for which the aggregate sentences to confinement" exceeded five years, 8 U.S.C. § 1182(a)(2)(B), or of certain crimes involving moral turpitude, id. § 1182(a)(2)(A)(i), are subject to mandatory detention. 8 U.S.C. § 1226(c)(1)(A).

However, in Jennings, the Supreme Court left open the possibility that individual detentions without bond hearings might be so lengthy as to violate constitutional due process. 138 S. Ct. at 851. "[T]he Due Process Clause may entitle even those mandatorily detained under § 1226(c) 'to an individualized determination as to his risk of flight and dangerousness.'" Velasco Lopez v. Decker, 978 F.3d 842, 853-54 (2d Cir. 2020) (quoting Demore, 538 U.S. at 532 (Kennedy, J., concurring)). Thus, where there has been an unreasonably prolonged mandatory detention of a noncitizen under § 1226(c), without access to a bond hearing, federal courts have found on habeas review that the noncitizen's Fifth Amendment due process rights were violated. See, e.g., Hylton v. Decker, 502 F. Supp. 3d 848, 855 (S.D.N.Y. 2020); Cabral v. Decker, 331 F. Supp. 3d 255, 262-63 (S.D.N.Y. 2018); Sajous v. Decker, No. 18-cv-2447, 2018 WL 2357266, at *1 (S.D.N.Y. May 23, 2018); see also Zadvydas v. Davis, 533 U.S. 678, 682 (2001) (observing that the "indefinite detention of aliens" who were "admitted to the United States but subsequently ordered removed" raises "serious constitutional concerns"). In such cases, federal courts have the authority to order that the petitioner

10

be released from detention unless the alien is provided with an
individualized bond hearing. See, e.g., Hylton, 502 F. Supp. 3d
at 853, 856; Hernandez v. Decker, No. 18-cv-5026, 2018 WL 3579108,
at *10 (S.D.N.Y. July 25, 2018).

After Jennings, courts in this Circuit have applied a case-
by-case approach to determine whether a noncitizen's continued
detention has become "unreasonable or unjustified," and thus a
violation of the noncitizen's Fifth Amendment due process rights.
Hylton, 502 F. Supp. 3d at 853 (collecting cases); Cabral, 331 F.
Supp. 3d at 260-61; Nikolic v. Decker, No. 19-cv-6047, 2019 WL
5887500, at *4 (S.D.N.Y. Nov. 12, 2019). This approach entails a
fact-intensive inquiry in which "courts examine an individual's
detention circumstances." Hylton, 502 F. Supp. 3d at 853; Nikolic,
2019 WL 5887500, at *4 (describing the relevant inquiry as "an
as-applied, fact-based analysis").

Several factors bear on whether a detention has become
unreasonable or unjustified. These factors include: "(1) the
length of time the petitioner has been detained; (2) the party
responsible for the delay; (3) whether the petitioner has
asserted defenses to removal; (4) whether the detention will
exceed the time the petitioner spent in prison for the crime
that made the petitioner removable; (5) whether the detention
facility is meaningfully different from a penal institution for
criminal detention; (6) the nature of the crimes committed by

11

the petitioner; and (7) whether the petitioner's detention is near conclusion." <u>Hylton</u>, 502 F. Supp. 3d at 853; <u>Cabral</u>, 331 F. Supp. 3d at 261; <u>Keisy G.M. v. Decker</u>, No. 21-cv-4440, 2021 WL 5567670, at *7 (S.D.N.Y. Nov. 29, 2021); <u>Nikolic</u>, 2019 WL 5887500, at *4. "As in any fact-based analysis, different factors take on different weight depending on the circumstances of the case." <u>Keisy G.M.</u>, 2021 WL 5567670, at *7.

III.

The petitioner does not dispute that he is subject to mandatory detention under 8 U.S.C. § 1226(c) in light of his Colombian conviction for attempted homicide and aggravated theft. Rather, the petitioner argues that his ongoing detention without a bond hearing is "unreasonable" and therefore violates the Due Process Clause of the Fifth Amendment. Pet. ¶ 4. The respondents oppose the petition on the grounds that the petitioner's ongoing detention is justified in light of the purposes of § 1226(c) and the individual circumstances of this case. As of the date of this Memorandum Opinion and Order, the petitioner has been detained at OCCF for just over 14 months.

A.

As a preliminary matter, the petitioner argues that he is entitled to habeas relief because due process requirements limit "the government's detention authority . . . to a six-month period, subject to . . . an individualized judicial bond hearing." Pet.

12

¶ 54. However, the Supreme Court in Jennings rejected this sort of six-month rule as a matter of statutory construction. See 138 S. Ct. at 847 ("Nothing in § 1226(a)'s text" requires "periodic bond hearings every six months"); id. at 846 ("[D]etention under § 1226(c) has a definite termination point: the conclusion of removal proceedings. . . . [T]hat definite termination point -- and not some arbitrary time limit devised by courts -- marks the end of the Government's detention authority."). The Supreme Court also vacated the decision in Lora v. Shanahan, 804 F.3d 601 (2d Cir. 2015), where the Second Circuit Court of Appeals had read a six-month requirement into § 1226(c). See Shanahan v. Lora, 138 S. Ct. 1260 (2018) (mem.). While the Supreme Court left open the issue of what requirements for immigration detention may arise out of the Fifth Amendment's Due Process Clause, see Jennings, 138 S. Ct. at 851, it would be inconsistent with the discussion of due process in Jennings to adopt a rule that due process requires an automatic bond hearing after a detention of six months. Rather, Jennings stressed that "[d]ue process is flexible" and "calls for such procedural protections as the particular situation demands." Id. at 852.

Thus, it would be inappropriate to apply the bright-line six-month rule that the petitioner proposes. See, e.g., Cabral, 331 F. Supp. 3d at 260 (declining to "adopt [a] six-month rule" in light of Jennings); Sajous, 2018 WL 2357266, at *8 ("[T]he

13

Court cannot conclude . . . that the Constitution would deem any detention beyond six months per se unconstitutional."). The fact that the petitioner's detention has exceeded six months does not automatically render the detention unconstitutional under the Fifth Amendment's Due Process Clause.

**B.**

Having rejected a six-month limitation on detention under § 1226(c), the Court turns to an individualized assessment of the petitioner's detention, taking into account the various factors that courts typically consider in this Circuit. The petitioner argues that those factors demonstrate the unconstitutionality of his continued detention without a bond hearing. See Pet. ¶¶ 48, 57, 59. However, in this case, the weight of these factors tilts against a finding that constitutional due process requires a bond hearing at this time.

The first factor is the length of the detention at issue. The petitioner correctly points out that courts in this Circuit have found due process violations where noncitizens were detained without bond hearings for periods of time much shorter than 14 months. See Pet. Supp. Br. at 3; see, e.g., Hylton, 502 F. Supp. 3d at 854, 856 (collecting cases and ultimately granting habeas relief to a petitioner detained for 14 months). However, courts in this Circuit have also denied requests for bond hearings from petitioners whose periods of detention were substantially longer,

14

in light of other relevant factors. See, e.g., Sosa Rodriguez v. Feeley, 507 F. Supp. 3d 466, 479-81 (W.D.N.Y. 2020) (27 months); Velez Funes v. Garland, No. 20-cv-883, 2021 WL 2515659, at *6, *7-9 (W.D.N.Y. June 18, 2021) (22 months, and collecting cases where "petitions based on 15 to 21 months' detention" were denied); Debel v. Dubois, No. 13-cv-6028, 2014 WL 1689042, at *6 (S.D.N.Y. Apr. 24, 2014) (18 months). When considered in combination with the other factors and the particular circumstances of this case, the length of the petitioner's detention is not unreasonable.

The second factor is the party responsible for the delay. In this case, there is no evidence that the petitioner has filed frivolous motions, made unnecessary requests for adjournment, or engaged in any other conduct that unreasonably delayed the removal proceedings. Rather, to the extent the petitioner is responsible for the delay, it is because the petitioner has diligently pursued his claims for relief from removal -- first before the IJ, then on appeal to the BIA, and now back before the IJ on remand. While the petitioner's efforts to seek such relief have inevitably prolonged his detention, the petitioner "should not be penalized for using his procedural remedies." Hylton, 502 F. Supp. 3d at 854.

On the other hand, there is also no evidence that the Government has dragged its feet, engaged in dilatory tactics, or unreasonably prolonged the petitioner's removal proceedings in any way. Moreover, the IJ and BIA held hearings and issued decisions

15

at reasonable intervals, given the time constraints inherent in managing burgeoning immigration dockets, and the IJ now appears to be moving the post-remand proceedings along expeditiously. Thus, while this second factor does not weigh against the petitioner, it also does not tilt in favor of a finding that the delay in the petitioner's detention is unreasonable or unjustified. See, e.g., Sigal v. Searls, No. 18-cv-389, 2018 WL 5831326, at *6 (W.D.N.Y. Nov. 7, 2018) ("Although [the petitioner] indisputably has every right to seek any relief from deportation for which he may be eligible, [the resulting] delay . . . does not make continued detention unreasonable or unjustified." (quoting Baker v. Johnson, 109 F. Supp. 3d 571, 586 (S.D.N.Y. 2015))).

The third factor is whether the petitioner has asserted defenses. In this case, the petitioner initially sought asylum, withholding of removal, and CAT relief. The IJ rejected all of those defenses to removal, and the BIA largely affirmed the IJ's decision. Thus, the petitioner's prospects of obtaining relief from removal are considerably lower than they may have appeared to be when the petitioner first filed his I-589 application. See Nikolic, 2019 WL 5887500, at *5 (observing that the IJ's rejection of the petitioner's "defenses to removal" suggested that the petitioner would "presumably be removed from the United States eventually"). However, the BIA partially remanded the petitioner's CAT claim to the IJ for further consideration of the theory that

16

he was a target of Colombian military personnel disguised as ELN insurgents. See BIA Decision at 7-8. In light of the BIA's remand order, it remains possible that the petitioner will obtain relief from removal. Accordingly, the third factor weighs slightly in favor of the petitioner. See, e.g., Sajous, 2018 WL 2357266, at *11 (noting that the "existence" of a defense to removal and "the resulting possibility that the [p]etitioner will ultimately not be removed . . . diminishes the ultimate purpose" of detention).

The fourth factor is the time of detention as compared to the period of incarceration for the underlying offense. In this case, the petitioner has been detained at OCCF for 14 months, a period of time substantially shorter than the 70 months (that is, 5 years and 10 months) of imprisonment to which the petitioner was sentenced in 2005. See, e.g., Kim Decl. ¶ 8; BIA Decision at 5. The petitioner notes that he was released on parole in 2008, but even with that parole taken into account, the petitioner's period of incarceration was roughly three years -- a period still significantly longer than 14 months in detention. Accordingly, this factor weighs against a bond hearing.

The fifth factor is whether the detention facility is meaningfully different from a penal institution. In this case, this factor "is at best neutral, and more likely weighs in favor of [the] [p]etitioner." McDonald v. Feeley, 535 F. Supp. 3d 128, 137 (W.D.N.Y. 2021). The petitioner argues generally that the

"conditions in ICE detention facilities are notoriously deficient," Pet. ¶ 38, but the petitioner provides no information about the specific conditions that he faces at OCCF, making it difficult to determine whether the circumstances of his detention are similar to those faced in a penal institution. Moreover, while the petitioner asserts that conditions for immigration detainees at OCCF "are identical to those for inmates in criminal cases," Pet. ¶ 37, the petitioner's only support for that claim is a case in which the immigration detainee was "held alongside criminally charged defendants and those serving criminal sentences," Velasco Lopez, 978 F.3d at 851. By contrast, in this case, the Government represents that the petitioner has remained in a housing unit where immigration detainees are held separately from criminal inmates. See Kim Decl. ¶ 11.

That said, "the reality" is that immigration detention facilities "house[] individuals against their will with various restrictions on their freedom of movement." McDonald, 535 F. Supp. 3d at 137-38. Furthermore, the Government has not provided any information as to how the conditions in OCCF's housing unit for immigration detainees differ from those in its correctional units. Thus, to the extent this factor carries weight in this case, it favors the petitioner, although not enough to overcome the other factors that cut against a finding of a due process violation.

The sixth factor is the nature of the petitioner's crime of conviction. The petitioner does not dispute that he was convicted of attempted homicide and aggravated theft. Pet. ¶ 18. Rather, the petitioner testified before the IJ that these charges were never justified, see IJ Decision at 4, and the petitioner reiterates his account of the events leading to the arrest in his petition, see Pet. ¶ 18. However, the IJ found that the petitioner's account was "improbable," "implausible," and "unpersuasive" in light of other evidence, see IJ Decision at 7-8, and the BIA affirmed that finding, see BIA Decision at 4. Relying on official Colombian court documents, the IJ found that the petitioner and another perpetrator repeatedly "stabbed the victim in the face, chest, and arms" with a knife and "stole his cellphone," "inflict[ing] multiple wounds" and "causing such severe injury to the victim [that] he was deemed temporarily disabled." IJ Decision at 10. The BIA affirmed these findings. See BIA Decision at 4-5. The particularly violent nature of this criminal conduct weighs heavily against a finding that continued detention is unreasonable. See, e.g., Sosa Rodriguez, 507 F. Supp. 3d at 480 n.10, 481 (finding that the petitioner's 27-month detention was not "unjustified," "especially in light of the nature of his conviction" for second-degree manslaughter, which "demonstrates a risk of dangerousness to the community"); see also Keisy G.M., 2021 WL 5567670, at *12 (the "seriousness" of the petitioner's assault conviction, which

was based on his "stealing a phone and attacking a person with a belt," "cut[] against [the] [p]etitioner"); Velez Funes, 2021 WL 2515659, at *1, *9 & n.7 (the "nature of the underlying [drug conspiracy] offense" demonstrated "a risk of dangerousness" and supported the "reasonableness of . . . continued detention").

The Court acknowledges that "while past criminal convictions are critical to evaluating a petitioner's risk of danger to the community and of flight, the process due even to excludable aliens requires an opportunity for an evaluation of the individual's current threat to the community and his risk of flight." McDonald, 535 F. Supp. 3d at 138 (emphasis in original). In this case, the relevant crimes took place 18 years ago, and the petitioner states that he has not been arrested or charged with a criminal offense since he was released on parole in 2008. Pet. ¶ 18. These facts mitigate some of the concerns about danger to the public and the risk of flight, but certainly not to the point of rendering the petitioner's detention unjustified. Indeed, the Government has submitted a sworn declaration stating that in September 2022, the petitioner initiated a physical altercation with another detainee at OCCF. Kim Decl. ¶ 25. The petitioner cites several general reasons why this statement should "be given no weight,"[7]

---

[7] These reasons are "the inherent unfairness of prison disciplinary processes, . . . a history of racist and abusive behavior by officers at Orange County Jail, . . . any lack of reference in the declaration to substantiation or investigation of the allegations by ICE, ICE's decision not to raise these allegations in open court subject to adversary process at [the petitioner's]

but notably, the petitioner does not deny that the altercation took place. Pet.'s Reply, ECF No. 13, at 6 n.5. Accordingly, the Government's representation reinforces the conclusion that concerns for public safety continue to justify detention pending the outcome of the petitioner's removal proceedings.

The seventh factor is whether the petitioner's detention is near conclusion. The IJ's first decision was substantially upheld by the BIA, with only one aspect of the petitioner's CAT claim awaiting resolution. Moreover, the parties' submissions suggest that the IJ has moved expediently in scheduling and conducting the post-remand proceedings. The IJ's decision on the CAT claim may not mark the end of the petitioner's detention pending the end of his removal proceedings: either party could appeal to the BIA from the IJ's decision, and if the BIA rules against the petitioner on appeal, the petitioner would have the right to petition the Second Circuit Court of Appeals for review of the agency's decision. However, "there is no indication" in this case "that [the petitioner's] continued detention . . . will last indefinitely." Sigal, 2018 WL 5831326, at *6 (quoting Baker, 109 F. Supp. 3d at 586). "To the contrary, [the] [p]etitioner's detention will come to an end, one way or another, upon the disposition of [any final] appeal," and if the petitioner's

---

trial hearing, and the lack of reliance on these allegations in [the Government's] brief." Pet.'s Reply, ECF No. 13, at 6 n.5.

remaining request for relief from removal is ultimately denied, there appears to be "no impediment" to his removal. Id.; Lway Mu v. Whitaker, No. 18-cv-6924, 2019 WL 2373883, at *5 (W.D.N.Y. June 4, 2019) ("[I]f [the petitioner's] appeal is denied and a final order of removal is entered against him, there do not appear to be any institutional or other barriers to his deportation."). Therefore, while the fact that the petitioner's detention may continue for at least several months does weigh in his favor, "the totality of the circumstances leads the Court to conclude that his detention without a bond hearing has not crossed the line into a due process violation at this point in time." Lway Mu, 2019 WL 2373883, at *5.

In short, some factors do favor the petitioner, but these factors do not outweigh the considerations that counsel strongly against a finding of a due process violation. On balance, the factors reveal that the petitioner's continued detention is not unreasonable or unjustified, and due process does not require a bond hearing at this time. "If, at some point in the future, there are factors involving the length of his detention [which] implicate constitutional concerns, the petitioner is entitled to file another habeas petition." Id. (quoting Andreenko v. Holder, No. 09-cv-8535, 2010 WL 2900363, at *4 (S.D.N.Y. June 25, 2010)); Velez Funes, 2021 WL 2515659, at *8 ("[A]ny harm that would result if [the petitioner's] detention continued for an unreasonable

amount of time is mitigated by his ability to file a new petition if the facts meaningfully change.").

Because the petitioner's continued detention pursuant to 8 U.S.C. § 1226(c) is not unreasonable or unjustified at this juncture, the petition is denied.

## CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed above, the arguments are either moot or without merit. For the foregoing reasons, the petition for habeas corpus is **denied**. The Clerk is directed to close all pending motions and to close this case.

SO ORDERED.

Dated:  New York, New York
        August 11, 2023

                                    John G. Koeltl
                            United States District Judge

23